DECISION ON OBJECTION TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Christine Markus, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its orders denying temporary total disability ("TTD") compensation beginning September 2, 1999, and to enter amended orders granting TTD compensation.
 {¶ 2} This matter was referred to a magistrate of this court, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court issue a writ of mandamus ordering the commission to vacate its orders on the basis that the commission abused its discretion in failing to exercise continuing jurisdiction to correct an error in the order of the staff hearing officer ("SHO"), dated February 15, 2000. (Attached as Appendix A.) The commission has filed an objection to the magistrate's decision.
 {¶ 3} In the order dated February 15, 2000, the SHO denied relator's request for TTD compensation from September 2, 1999 through January 30, 2000, finding that the employer had made a written offer for relator to return to work on September 2, 1999, and that relator had failed to return to work. The magistrate concluded that the February 15, 2000 order contained a clear mistake of law. More specifically, the magistrate found that it was undisputed that Dr. Lawrence Lief was the physician of record at the time of the written job offer, and that Dr. Kenneth Chapman, who had examined relator and completed a "Modified Duty-Attending Physician Statement," indicating to the employer that relator could perform certain listed duties, had never been relator's physician of record. Rather, a physician "covering" for Dr. Lief had referred relator for a consultation with Dr. Chapman. The magistrate concluded that it was at least "implicit in Ohio Adm. Code 4121-3-32(A)(4)'s definition of `Treating physician' that in order for a written job offer to be suitable it must be based upon the medical restrictions of the employee's physician of record on the date of the job offer."
 {¶ 4} In its objection, the commission argues that the magistrate relied upon an inapplicable provision of Ohio Adm. Code4121-3-32(B). Specifically, the commission argues that the magistrate erroneously applied Ohio Adm. Code 4121-3-32(B)(1) to the facts of this case, and that the magistrate should have instead applied Ohio Adm. Code 4121-3-32(B)(2). The commission contends that Ohio Adm. Code 4121-3-32(B) sets forth two distinct procedures for terminating TTD compensation, with the critical distinction being whether termination was ordered with or without a hearing.
 {¶ 5} Ohio Adm. Code 4121-3-32(B) states in pertinent part:
(1) Temporary total disability may be terminated by a self-insured employer or the bureau of workers' compensation in the event of any of the following:
* * *
(b) The employee's treating physician finds that the employee is capable of returning to his former position of employment or other available suitable employment.
* * *
(2) Except as provided in paragraph (B)(1) of this rule, temporary total disability compensation may be terminated after a hearing as follows:
* * *
(d) Upon the finding of a district hearing officer that the employee has received a written job offer of suitable employment.
 {¶ 6} The commission argues that, in the instant case, relator's benefits were terminated following a hearing, and, therefore, the controlling provision is Ohio Adm. Code4121-3-32(B)(2)(d). Further, based upon its contention that this case involves a termination of TTD compensation following a hearing, the commission argues that termination of such benefits was proper even if the employer's job offer was not premised on medical restrictions set forth by relator's treating physician.
 {¶ 7} Upon review, we are not persuaded by the commission's contention that Ohio Adm. Code 4121-3-32(B)(2)(d) controls the facts of this case. While the commission characterizes this case as involving the termination of TTD benefits following a hearing, the record does not indicate, at the time of the first hearing before the SHO, that relator had been paid any TTD benefits (i.e., at that time, relator did not have an ongoing TTD award subject to termination). Rather, it appears that the issue at that hearing involved a dispute over the obligation to pay TTD benefits in the first instance (and, absent evidence to the contrary, it is presumed that the TTD award granted by the hearing officer for the period of July 26, 1999 to September 1, 1999 was paid, pursuant to R.C. 4123.511(H)(4), upon issuance of the SHO's order following that hearing). Accordingly, because the hearing before the SHO did not result in a termination of benefits already being received, we do not find Ohio Adm. Code4121-3-32(B)(2)(d) to be dispositive of this action.
 {¶ 8} A review of the record indicates that, during the hearings before the district hearing officer ("DHO") and SHO, the primary issue involved a consideration as to who was relator's treating physician at the time of the job offer in August 1999. As also noted, the magistrate concluded that Dr. Lief, rather than Dr. Chapman, was the treating physician. Even assuming, however, that Dr. Lief was the treating physician at the time of the job offer, we do not find that the commission abused its discretion in denying TTD compensation for the period at issue. Based upon the evidence submitted during those hearings, the DHO and SHO both found that the restrictions provided by Dr. Lief were "much less stringent" than those set forth in Dr. Chapman's letter dated August 18, 1999. Pursuant to Ohio Adm. Code4121-3-32(A)(6), a "job offer" is defined to mean "a proposal, made in good faith, of suitable employment[.]" The term "suitable employment" is defined as "work which is within the employee's physical capabilities." Ohio Adm. Code 4121-3-32(A)(3). Under the circumstances of the present case, even if Dr. Chapman was not relator's treating physician, where there was evidence that Dr. Chapman's restrictions were more stringent than those of Dr. Lief, we cannot conclude that the commission abused its discretion in finding that the employer's job offer was within relator's restrictions, and that it therefore constituted a good-faith offer of suitable employment.
 {¶ 9} Based upon the foregoing, we sustain the commission's objection, albeit for the reasons stated above. Accordingly, we adopt the magistrate's findings of fact, but not the magistrate's conclusions of law, and relator's requested writ of mandamus is denied.
Objection sustained; writ of mandamus denied.
Bryant and Watson, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State ex rel. Christine Markus, : Relator, : v. : No. 03AP-249 Industrial Commission of Ohio : (REGULAR CALENDAR) and Myocare Nursing Home Inc., : Respondents. :
 MAGISTRATE'S DECISION Rendered on September 29, 2003 Yulish, Twohig Associates Co., L.P.A., and Jeffery S.Watson, for relator.
Jim Petro, Attorney General, and Jacob Dobres, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 10} In this original action, relator, Christine Markus, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its orders denying temporary total disability ("TTD") compensation beginning September 2, 1999, and to enter amended orders granting TTD compensation.
Findings of Fact:
 {¶ 11} 1. On November 12, 1998, relator sustained an industrial injury while employed as an aide at a nursing home operated by respondent Myocare Nursing Home Inc. ("employer"), a state-fund employer. Her industrial claim is allowed for "tendonitis right elbow," and is assigned claim number 98-575756.
 {¶ 12} 2. Attending physician Lawrence Lief, D.O., certified that relator was temporarily totally disabled beginning July 27, 1999, on the commission's C-84 form.
 {¶ 13} 3. A physician who was "covering" for Dr. Lief referred relator for a consultation with Kenneth W. Chapman, M.D.
 {¶ 14} 4. Dr. Chapman examined relator and thereafter issued a two page narrative report dated August 3, 1999. Dr. Chapman's August 3, 1999 report states in part:
PHYSICAL EXAMINATION: * * * On evaluation, she is acutely tender over the lateral epicondyle of the right elbow. She does have tenderness down into the extensor mass. ROM of the elbow essentially is full, although she states it strains at full extension. * * *
DIAGNOSTIC STUDIES: * * * The x-rays of elbow does show a calcification right at the radial aspect of the elbow right at the radial head that probably is some calcification within the capsule. It could be a very slight avulsion fracture from the radial head. I am not quite sure what it is.
IMPRESSION: Patient with symptoms and signs that would be compatible with a lateral epidcondylitiis of the elbow, however, her history is not compatible with that, and I am not sure of the calcification on the x-rays. I think this patient may have a more severe problem that [sic] just a tendonitis.
PLAN: I want the patient to get an MRI of the elbow. In the meantime, I am going to put her on Depo-Medrol for a 6 day course to see if this gives her good symptomatic relief. We will see the patient in the office after we get the MRI.
 {¶ 15} 5. During the time of relator's consult with Dr. Chapman, the employer contacted Dr. Chapman directly and asked him to complete a form captioned "Modified Duty-Attending Physician Statement."
 {¶ 16} 6. By letter dated August 4, 1999, the employer's personnel director informed relator as follows:
We have received documentation from Dr. Kenneth Chapman M.D. indicating that you can return to work performing transitional duty. If you are unaware, transitional duty alters your job description based on what the doctor indicates you can safely do. I have faxed over a job task sheet to Dr. Chapman, and after review he has indicated what you can safely do on the job.
We have attempted contact with you to schedule you for return to work. This letter serves as your notice that if we do not hear from you by Monday, August 9, 1999 to schedule work, we will have to consider this your resignation from West Park Healthcare.
 {¶ 17} 7. Apparently, relator did not appear for work on August 9, 1999, as the personnel director's letter instructs.
 {¶ 18} 8. In a letter dated August 18, 1999, the employer's personnel director listed 13 duties pertaining to the aide position and asked Dr. Chapman if relator was physically able to perform those duties. Dr. Chapman responded on August 19, 1999, that relator was able to perform the listed duties.
 {¶ 19} 9. On August 23, 1999, the personnel director wrote to relator's legal counsel:
* * * Christine's physician, Dr. Kenneth W. Chapman, M.D., has indicated that she is physically able to perform the restricted duties of a Nursing Assistant as listed in the attached letter dated August 18, 1999. We are formally instructing Christine Markus to report to work at West Park Healthcare performing the restricted duties of a Nursing Assistant as indicated in the attached letter dated August 18, 1999. We are expecting her to report on Thursday, September 2, 1999 at 6:30 a.m.
 {¶ 20} 10. Apparently, relator did not appear for work on September 2, 1999, as instructed by the personnel director.
 {¶ 21} 11. By letter dated September 3, 1999, the personnel director informed relator that she was terminated from her employment effective September 3, 1999.
 {¶ 22} 12. In the meantime, on August 24, 1999, relator first visited Victor P. Strimbu, M.D., who specializes in orthopedics. In his office note of that date, Dr. Strimbu wrote that he was keeping relator off work until such time as she returned to see him following an MRI that was to be performed.
 {¶ 23} 13. On September 1, 1999, Dr. Strimbu issued a disability slip certifying that relator is unable to work until the estimated date of September 30, 1999.
 {¶ 24} 14. On January 13, 2000, relator completed a "change of physician notice" (C-23) requesting that her physician of record be changed from Dr. Lief to Dr. Strimbu. Subsequently, the change of physician request was approved effective January 13, 2000.
 {¶ 25} 15. The issue of relator's entitlement to TTD compensation based upon Dr. Lief's certification was initially addressed in an order from the administrator of the Ohio Bureau of Workers' Compensation ("bureau") dated October 4, 1999.
 {¶ 26} 16. The administrator's order was administratively appealed.
 {¶ 27} 17. Following a January 6, 2000 hearing, a district hearing officer ("DHO") issued an order stating:
* * * The District Hearing Officer orders that claimant is entitled to temporary total disability compensation for the period of 07/26/1999 to 09/01/1999 per the C-84's of Dr. Leif.
Temporary total disability compensation for the period of 09/02/1999 to 01/30/2000 is denied. The District Hearing Officer finds that claimant was made an offer in writing from the employer to return to work 09/02/1999 light duty. The employer reviewed the restriction set forth by Dr. Chapman for his 08/18/1999 letter and physical capacities evaluation. Claimant did not return to work as requested by the employer.
Claimant contends that Dr. Chapman was not her physician of record and that her treating physician was Dr. Strimbu. The District Hearing Officer can find no verification that Dr. Strimbu is the physician of record or the date his alleged status as a physician of record became effective. The District Hearing Officer also finds per testimony at hearing and Dr. Lief's records that claimant was referred to Dr. Chapman by Dr. Hadzima who was filling in for Dr. Lief. Dr. Chapman is an orthopedic specialist. The District Hearing Officer finds that Dr. Lief has submitted various physical capacity evaluations to the file back dated to 05/19/1999. The restrictions provided by Dr. Lief are must less stringent than those set forth in Dr. Chapman's 08/19/1999 letter and fit well within the light duty job offer made to claimant by the employer.
 {¶ 28} 18. Relator administratively appealed the DHO's order of January 6, 2000.
 {¶ 29} 19. Following a February 15, 2000 hearing, a staff hearing officer ("SHO") issued an order stating that the DHO's order was being "modified." The SHO's order states:
Staff Hearing Officer grants injured worker's request to award temporary total disability compensation from 07/26/1999 through 09/01/1999.
This order is based upon the C-84s of Dr. Lief.
Staff Hearing Officer denies injured worker's request to award temporary total disability compensation from 09/02/1999 through 01/30/2000. Staff Hearing Officer finds that employer made a written offer for the injured worker to return to light duty work on 09/02/1999. The employer reviewed the restrictions set forth by Dr. Chapman in his 08/18/1999 letter and physical capacities evaluation. Injured worker did not return to work as requested by the employer.
Injured worker contends that Dr. Chapman was not her physician of record and that her treating physician was Dr. Strimbu. Staff Hearing Officer can find no verification that Dr. Strimbu is the physician of record or the date on which his alleged status as physician of record became effective. Staff Hearing Officer also finds that injured worker was referred to Dr. Chapman by Dr. Hadzima who was filling in for Dr. Lief. Dr. Chapman is an orthopedic specialist. Staff Hearing Officer finds that Dr. Lief has submitted various physical capacities evaluations to the file dating back to 05/19/1999. The restrictions provided by Dr. Lief are less stringent than those provided by Dr. Chapman's 08/18/1999 letter and fit well within the light duty job offer made to injured worker by the employer.
 {¶ 30} 20. On March 11, 2000, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of February 15, 2000.
 {¶ 31} 21. On March 24, 2000, relator filed a motion asking the commission to exercise its continuing jurisdiction regarding its prior denial of TTD compensation beginning September 2, 1999. In her motion, relator asserted that Dr. Chapman had never been her physician of record and thus was "legally incapable" of releasing her to return to work.
 {¶ 32} 22. Following a June 20, 2000 hearing, a DHO issued an order denying relator's March 24, 2000 motion. The DHO's order states:
Temporary total compensation is barred based on prior 01/06/2000 District Hearing Officer and 02/15/2000 Staff Hearing Officer orders which are res judicata in effect.
 {¶ 33} 23. Relator administratively appealed the DHO's order of June 20, 2000. Following an August 9, 2000 hearing, an SHO issued an order affirming the DHO's order.
 {¶ 34} 24. On September 14, 2000, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of August 9, 2000.
 {¶ 35} 25. On February 23, 2001, relator filed another C-86 motion regarding the prior denial of TTD compensation. Following an April 30, 2001 hearing, a DHO issued an order denying relator's February 23, 2001 motion. The DHO's order states:
District Hearing Officer specifically finds the period of Temporary Total Disability Compensation requested is res judicata based upon the District Hearing Officer order dated 06/20/2000 and Staff Hearing Officer order dated 08/09/2000.
District Hearing Officer further finds that the evidence now submitted attached to claimant's C-86 does not invoke continuing jurisdiction as alleged by claimant's representative as said evidence was available and attainable at the time the issue of Temporary Total Disability Compensation for the period requested was adjudicated. District Hearing Officer finds claimant cannot relitigate the issue which have [sic] clearly been argued through all existing administrative levels.
 {¶ 36} 26. Relator administratively appealed the DHO's order of April 30, 2001.
 {¶ 37} 27. Following a June 11, 2001 hearing, an SHO issued an order affirming the DHO's order of April 30, 2001. The SHO's order states:
The Staff Hearing Officer concurs with the District Hearing Officer's finding that there is no jurisdiction under which to reconsider payment of temporary total disability compensation for the period 09/02/1999 to 05/01/2000. Compensation for this period was already addressed and ruled upon (see, 06/20/2000 District Hearing Officer order; 08/09/2000 Staff Hearing Officer order).
Claimant has not set forth facts or circumstances as would justify the exercise of the discretion granted under R.C. 4123.52
to revisit a prior decision.
 {¶ 38} 28. On July 6, 2001, another SHO issued an order refusing relator's administrative appeal from the SHO's order of June 11, 2001.
 {¶ 39} 29. On March 14, 2003, relator, Christine Markus, filed this mandamus action.
Conclusions of Law:
 {¶ 40} The issue is whether the commission abused its discretion in determining that relator had received a written job offer of suitable employment that was the basis for the commission's denial of TTD compensation for the period beginning September 2, 1999.
 {¶ 41} Finding that the commission abused its discretion, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 42} R.C. 4123.56(A) provides that TTD compensation shall not be paid "when work within the physical capabilities of the employee is made available by the employer."
 {¶ 43} Supplementing the statute, Ohio Adm. Code 4121-3-32, captioned "Temporary disability," provides, in pertinent part:
(A) * * * The following definitions shall be applicable to this rule:
* * *
(3) "Suitable employment" means work which is within the employee's physical capabilities.
(4) "Treating physician" means the employee's attending physician of record on the date of the job offer, in the event of a written job offer to an employee by an employer. If the claimant requested a change of doctors prior to the job offer and in the event that such request is approved, the new doctor is the treating physician.
* * *
(6) "Job offer" means a proposal, made in good faith, of suitable employment within a reasonable proximity of the claimant's residence. If the claimant refuses an oral job offer and the employer intends to initiate proceedings to terminate temporary total disability compensation, the employer must give the claimant a written job offer at least forty-eight hours prior to initiating proceedings. If the employer files a motion with the industrial commission to terminate payment of compensation, a copy of the written offer must accompany the employer's initial filing.
(B)(1) Temporary total disability may be terminated by a self-insured employer or the bureau of workers' compensation in the event of any of the following:
* * *
(2) Except as provided in paragraph (B)(1) of this rule, temporary total disability compensation may be terminated after a hearing as follows:
* * *
(d) Upon the finding of a district hearing officer that the employee has received a written job offer of suitable employment.
 {¶ 44} It is at least implicit in Ohio Adm. Code4121-3-32(A)(4)'s definition of "Treating physician" that in order for a written job offer to be suitable it must be based upon the medical restrictions of the employee's physician of record on the date of the job offer.
 {¶ 45} It is undisputed that Dr. Lief was the physician of record at the time of the job offers at issue. Relator did not request a change of physician until January 13, 2000, long after the job offers had expired.
 {¶ 46} Dr. Chapman has never been relator's physician of record. Dr. Chapman was an examining physician who rendered a consultation to the physician of record.
 {¶ 47} It is clear that the job offers were not premised upon the medical restrictions of the physician of record as Ohio Adm. Code 4121-3-32(A)(4) requires.
 {¶ 48} Thus, the commission abused its discretion in determining that relator had received a written job offer of suitable employment that was the basis for denial of TTD compensation beginning September 2, 1999.
 {¶ 49} Based upon the above analysis, the magistrate notes that the SHO's order of February 15, 2000, which was rendered final by the SHO's refusal order mailed March 11, 2000, contains a clear mistake of law and/or clear mistake of fact which was grounds for the commission's exercise of its continuing jurisdiction under R.C. 4123.52 to correct the mistake. SeeState ex rel. B C Machine Co. v. Indus. Comm. (1992),65 Ohio St.3d 538. In her motion filed March 24, 2000, relator requested that the commission exercise continuing jurisdiction over its prior order. However, the commission denied relator's motion on grounds that the prior commission order was res judicata. The commission also abused its discretion by failing to exercise continuing jurisdiction to correct the error in the SHO's order of February 15, 2000.
 {¶ 50} Thereafter, during two hearings held respectively on April 30, 2001 and June 11, 2001, the commission again had an opportunity to exercise its continuing jurisdiction to correct the error in the SHO's order of February 15, 2000. However, the commission failed to exercise its continuing jurisdiction. This was again an abuse of discretion by the commission.
 {¶ 51} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its orders to the extent that they are inconsistent with this magistrate's decision and to enter new orders consistent with this magistrate's decision.
 /s/ Kenneth W. Macke
KENNETH W. MACKE MAGISTRATE